IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA LAWRENCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 6094 |
| v. ) | |
| ) | |
| ) | |
| LIFE INSURANCE COMPANY ) | |
| OF NORTH AMERICA, ) | Magistrate Judge Maria Valdez |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda Lawrence has sued Life Insurance Company of North America ("LINA") to recover long-term disability benefits pursuant to § 502(a)(1)(B) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a). Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court finds that there are genuine issues of material fact precluding summary judgment for either party. Thus, the parties' cross-motions for summary judgment [Doc. No. 16] are denied.

## FACTS

Unless otherwise noted, the following material facts are either undisputed or deemed admitted due to a party's failure to comply with Local Rule 56.1, which this

court strictly enforces. For the purposes of summary judgment, where facts are contested, the Court accepts the legitimate factual assertions of the non-moving party. *Pardo v. Hosier*, 946 F.2d 1278, 1280 (7th Cir. 1991).

A. **Background**

Lawrence was employed by State Farm in a full-time capacity as a Claim Service Assistant. (Pl.'s LR 56.1 ¶ 6.) In May 2002, Lawrence was diagnosed with multiple sclerosis ("MS") and continued to work as a Claims Service Assistant at State Farm through June 24, 2005. (Def.'s LR 56.1 ¶ 11.) Lawrence ceased working on June 27, 2005, claiming that fatigue and difficulty walking secondary to MS prevented her from continuing to work. (Pl.'s LR 56.1 ¶¶ 6, 10.) Lawrence was a "participant," as defined by 29 U.S.C. § 1002(7), in the State Farm Insurance Company's Long Term Disability Insurance Plan ("Plan"). (Def.'s LR 56.1 ¶ 2.) The Plan provides eligible State Farm employees with long-term disability ("LTD") coverage. (*Id.*) LINA[1] issued the State Farm Group Policy No. LK- 0060900 ("Policy") for the benefit of State Farm employees. (Pl.'s LR 56.1 ¶¶ 7, 8.)

The Group Insurance Plan and the Policy grant LINA discretionary authority to decide whether the benefits are payable:

> For plans subject to the Employee Retirement Income Security Act (ERISA), the Plan Administrator of the Employer's welfare benefit plan (the Plan) has appointed the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to

---

[1] LINA briefly argues that it was improperly named a defendant. However, because LINA is the Plan fiduciary with discretionary authority to make benefit determinations, the Court will disregard this underdeveloped argument. For the sake of clarity, LINA will be used to refer to the defendant and all of its subsidiaries, including CIGNA.

2

make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of the Plan to the full extent permitted by law.

(Def.'s LR 56.1 ¶ 6.)

On January 1, 2002, State Farm and LINA executed the Employee Benefit Plan Appointment of Claim Fiduciary, in which State Farm designated LINA as the "fiduciary for the review of claims under the Plan." (*Id.* ¶ 7.) Consistent with the Plan and the Policy, State Farm delegated to LINA the "authority, in its discretion, to interpret the terms of the Plan, including the Policy; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." (*Id.*) The Policy defines disability as follows:

> **Definition of Disability**
> An Employee is Disabled if, because of Injury or Sickness,
>
> 1. he/she is unable to perform all the material duties of his/her regular occupation, or solely due to Injury or Sickness, he/she is unable to earn more than 80% of his/ her Indexed Covered Earnings; and
>
> 2. after Disability Benefits have been payable for 24 months, he/she is unable to perform all the material duties of any occupation for which he/she may reasonably be qualified based on education, training or experience or solely due to Injury or Sickness, he/she is unable to earn more than 80% of his/her Indexed Covered Earnings.

(*Id.* ¶ 8.)

LTD benefits become payable after the Benefit Waiting Period, when the participant meets the definition of disability either at the end of State Farm paid sick leave or after 180 days, whichever is longer. (*Id.* ¶ 9.) The gross benefit under the Plan is the lesser of 60% of the employee's Covered Earnings or $32,000 minus the employee's "Other Income Benefits," which are defined to include Social Security Disability benefits and "any retirement plan benefits funded by the Employer which the Employee receives prior to age 65." (*Id.* ¶ 10.)

3

Lawrence applied for LTD benefits on August 25, 2005, claiming that MS rendered her disabled within the meaning of the Plan and Policy. (Pl.'s LR 56.1 ¶ 11.) LINA denied her claim on October 31, 2005. (*Id.*) Lawrence appealed LINA's decision on April 14, 2006 and on July 25, 2006, but the appeals were denied on May 17, 2006 and September 21, 2006 respectively, exhausting her pre-suit appeals. (*Id.* ¶¶ 12, 13.)

Concurrent with her application for LTD benefits, Lawrence applied for Social Security disability benefits with the assistance of Allsup, Inc. (*Id.* ¶ 14.) The Social Security Administration ("SSA") approved her claim, finding that Lawrence's MS prevented her from performing any substantial gainful activity beginning June 24, 2005. (*Id.*) She began receiving benefits in December 2005. (*Id.*) The SSA determined that Lawrence was disabled under 11.09A of Part 404, Subpart P, Appendix 1, thereby allowing the SSA to find that she was disabled without considering her age, education, or work experience under 30 C.F.R. § 404.1520(d). (*Id.*)

On January 8, 2007, the U.S. Railroad Retirement Board found Lawrence to be disabled and awarded her a Disabled Widow's annuity under the Railroad Retirement Act. The annuity was based on a permanent disabling condition severe enough to prevent any kind of regular employment. (*Id.* ¶ 27.)

B. **Medical Evidence**

On August 8, 2004, Lawrence was examined by her neurologist and treating doctor, Jeffrey Farbman, M.D., who reported that her gait was "markedly unsteady, even with a walker." (*Id.* ¶ 15.) On November 3, 2004, Dr. Farbman reported that Lawrence had experienced several falls and had problems with her right foot. (*Id.* ¶ 16.) He reported that her gait was spastic and that she dragged both feet and demonstrated truncal

ataxia. (*Id.*) He referred her for an MRI of the brain and cervical and thoracic spine, which was performed on November 8, 2004. (*Id.* ¶¶ 16, 17.)

The MRI of the brain revealed the following findings consistent with the demyelinating process of MS: multiple areas of increased T2 signal within the periventricular system; subcortical white matter bilaterally with the majority of the lesions having a perpendicular configuration to the ventricular system; lesions within the occipital and temporal lobes surrounding the occipital horns of the left lateral ventricle; and mild enhancement of lesions in the superior right frontal gyrus and the left deep white matter. (*Id.* ¶ 17.)

The MRI of the cervical spine also revealed findings consistent with a demyelinating process including: lesions to the right of midline at C3-4 and C4-5, within the central cord at C5-6, to the right of midline and in the central cord at C6-7, to the left of midline at C7 and a posterior osteophyte disc complex involving the C6-7 level. (*Id.* ¶ 19.) Finally, the MRI of the thoracic spine revealed increased T2 signal involving levels T4, T5, T7 and T8, which was also consistent with a demyelinating process. (*Id.*)

On July 6, 2005 and on August 22, 2005, Dr. Farbman reported that Lawrence was having problems with falls, that her gait was markedly unsteady and spastic even with a walker, and that a right footdrop was present. (*Id.* ¶¶ 21, 22.) Dr. Farbman certified in an Attending Physician's Statement of Disability that Lawrence was "completely disabled from all work." (*Id.* ¶ 22.)

According to the State Farm job description, Lawrence's responsibilities included operating fax machines, copiers and computers; distributing incoming mail and processing outgoing mail; assisting claims managers by setting up files and filing claim

5

correspondence; pulling and filing from a five-drawer filing cabinet, which required lifting objects weighing no more than twenty-five pounds; and answering the telephone and applying State Farm's customer service philosophy. (Def.'s LR 56.1 ¶ 16; Pl.'s LR 56.1 ¶ 25.) Under the Dictionary of Occupational Titles ("DOT"), Lawrence's position was classified as "sedentary." (Def.'s LR 56.1 ¶ 17.)

Frank Berardi, OTR/L, CWCE conducted a Functional Capacity Evaluation ("FCE"), dated July 14, 2004, concluding that Lawrence "would currently qualify for Sedentary level work with physical restrictions to limit the mobility demands of her job." (*Id.* ¶ 20.) The mobility restrictions included the following: Lawrence could lift a maximum of ten pounds unilaterally with support with one hand on a walker or external object to maintain standing balance and stability; carry only items that can be held in one hand or placed in a walker bag while maintaining support of a walker; stand and walk only occasionally for relatively short intervals using support of a rolling walker as needed; no balancing on slippery, uneven, or erratically moving surfaces; no stair or ladder climbing; and no low-level body positioning including deep crouching or kneeling. (Pl.'s LR 56.1 ¶ 26.)

On September 30, 2005, Kathi Coon, a Nurse Case Manager at LINA, evaluated the medical evidence submitted by Dr. Farbman and Lawrence to determine whether Lawrence was disabled from her sedentary position at State Farm due to MS. (Def.'s LR 56.1 ¶ 24.) Nurse Coon reported that neither Lawrence's physician notes, the FCE nor the other clinical documentation showed significant change in her MS symptoms or functionality, concluding that Lawrence had the capacity to perform sedentary work. (*Id.* ¶¶ 25, 26.)

On October 31, 2005, LINA denied Lawrence's claim on the grounds that the evidence did not establish she was disabled from her prior position for the following reasons: (1) Lawrence had performed her position since May 2002 despite MS; (2) Lawrence and Dr. Farbman had not documented a worsening in her condition; (3) the FCE found Lawrence to be capable of sedentary work; (4) Lawrence had continued performing her occupation after the FCE. (*Id.* ¶¶ 27, 28.)

In her first appeal, in April 2006, Lawrence advised LINA that in January 2006, the Social Security Administration ("SSA") concluded she became eligible for SSD in December 2005. (*Id.* ¶ 32.) Lawrence also provided additional evidence which she argued indicated a worsening of her condition, including a letter from a co-worker, records from Dr. Farbman, and documentation that she had called an ambulance after falling in October 2005. (*Id.* ¶ 31.)

In a letter dated May 17, 2006, LINA denied Lawrence's appeal, stating that LINA was not bound by the SSA's determinations because it used different eligibility criteria and that the evidence Lawrence submitted related to the period of November 2004 to November 2005 and did not document a worsening in her symptoms from MS at the time she stopped working. (*Id.* ¶ 33.)

In her second appeal, in September 2006, Lawrence argued that her work absences increased from thirty-three days between June 2003 and June 2004 to seventy-one days from July 2004 to June 2005, reflecting a worsening of her condition. (*Id.* ¶¶ 34, 35.) LINA noted that her absences were concentrated in June and July 2004, when she took twenty-two days of sick leave, nearly a year before she stopped working. (*Id.* ¶ 36.) LINA further noted that she took ten days of paid sick leave from August to

December 2004 and took nine days of sick leave in 2005, prior to ceasing work in June. (*Id.*)

In a September 19, 2006 report, John Mendez, MD and Karen Haley, RN reevaluated all of Lawrence's medical records and submissions. (*Id.* ¶¶ 38, 39.) Dr. Mendez and Nurse Haley noted that as of August 2005, Dr. Farbman's exams showed no cognitive limitations or palmar drift, an unsteady and spastic gait while using a walker, enhanced tone in lower extremities, and a right foot drop. (*Id.* ¶ 40.) Dr. Mendez concluded that although the medical records provided "ample evidence" of lower extremity deficits including an unsteady gait and right foot drop, these conditions did not preclude Lawrence from performing her position at State Farm for the duration of the benefit waiting period. (*Id.* ¶ 42.) In support, Dr. Mendez noted that the position was sedentary, that Lawrence had no visual impairment, no range of motion deficits in the upper extremities, no cognitive impairments, and that she had full upper extremity motor strength. (*Id.*) On September 21, 2006, LINA denied Lawrence's second appeal based on the analysis of Dr. Mendez and Nurse Haley. (*Id.* ¶ 43.)

## DISCUSSION

### A.   Summary Judgment Standard

The parties filed cross-motions for summary judgment on the issue of whether LINA properly denied Lawrence's claim for LTD benefits. Pursuant to Rule 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law." A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). When reviewing the record, all reasonable inferences must be drawn in the light most favorable to the non-movant. *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 682-83 (7th Cir. 2000). When cross-motions for summary judgment are involved, those requirements demand a dual perspective, one that has been described as Janus-like, sometimes resulting in the denial of both motions. *See Coles v. LaSalle Partners Inc. Disability Plan*, 287 F. Supp. 2d 896, 900. (N.D. Ill. 2003); *Tevlin v. Metro. Water Reclamation Dist.*, 237 F. Supp. 2d 895, 897 (N.D. Ill. 2002).

B. <u>Analysis</u>

Under ERISA's civil enforcement provision, § 1132(a)(1)(B), the judicial standard of review hinges on whether the language of the policy grants the plan administrator or fiduciary discretionary authority in making benefit determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 989 (7th Cir. 2005). As a default, courts review benefit determinations under ERISA by applying a *de novo* standard. *Firestone*, 489 U.S. at 115; *Ruiz*, 400 F.3d at 989. However, when the plan contains language that confers discretion to the plan administrator or fiduciary, courts apply the arbitrary and capricious standard of review. *Firestone*, 489 U.S. at 114; *Ruiz*, 400 F.3d at 989; *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 408 (7th Cir. 2004). In order to lower the level of judicial review from the *de novo* to the arbitrary and capricious standard, the language of the plan should "clearly and

9

unequivocally state that it grants discretionary authority to the administrator." *Perugini-Christen v. Homestead Mortgage Co.*, 287 F.3d 624, 626 (7th Cir. 2002).

Lawrence argues that the plan document contains no language that would give the plan administrator or fiduciary the authority to determine eligibility. However, the defendant points to the following specific language in the plan granting LINA discretionary authority: "In this role, the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." (Def.'s LR 56.1 ¶ 6.) The defendant also points to a similar grant of discretion in the Employee Benefit Plan Appointment of Claim Fiduciary form, in which State Farm delegated to LINA the "authority, in its discretion, to interpret the terms of the Plan, including the Policy; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." (Def.'s LR 56.1 ¶ 7.) This Court finds that the unambiguous discretionary language in the Group Insurance Plan and Policy as well as the Appointment of Claim Fiduciary form renders the arbitrary and capricious standard of review appropriate in this case. *See Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 810 (7th Cir. 2006); *Leipzig*, 362 F.3d at 408.

Under the arbitrary and capricious standard, an administrator's decision to deny a claimant's benefits is entitled to great deference. *Ruiz*, 400 F.3d at 991. A court will not disturb the benefit determination unless it is "downright unreasonable." *See Davis v. UNUM Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006); *Ruiz*, 400 F.3d at 989; *Carr v. Gates Health Care Plan*, 195 F.3d 292, 296 (7th Cir. 1999); *see also Herzberger*

v. *Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000) (stating that determinations will be overturned only when they are "unreasonable, and not merely incorrect").

However, the deferential and capricious standard of review is not a "rubber stamp and deference need not be abject." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). Even under the arbitrary and capricious standard, courts will not uphold a decision to deny benefits "when there is an absence of reasoning in the record to support it." *Id.* at 774-75. A plan administrator's benefit determination will be upheld when the decision is based on an informed judgment "that is satisfactory in light of the relevant facts, *i.e.*, one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." *Exbom v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990).

To determine whether LINA's decision was "downright unreasonable," this Court must examine whether there is rational support in the record for LINA's determination that Lawrence was not disabled to the extent that she was unable to perform the duties of her regular occupation. Lawrence argues that LINA's decision was unreasonable for the following reasons: (1) LINA unreasonably disavowed Lawrence's favorable SSA determination; (2) LINA mistakenly concluded that there was no evidence that Lawrence's condition had worsened; (3) LINA incorrectly classified Lawrence's job as "sedentary" and ignored limitations noted in the FCE report; and (4) LINA inappropriately relied on a report by a non-treating, non-consulting physician. The Court will address each of these in turn.

11

1. **SSA Determination**

Lawrence argues that LINA unreasonably disregarded her favorable SSA determination. Courts have held that although an SSA's disability determination is not binding on an ERISA plan administrator, it can be "compelling evidence" of a claimant's disability and may be considered by a court reviewing an ERISA claim. *LaBarge v. Life Ins. Co. of N. Am.*, No. 00C0512, 2001 WL 10957, at *8 (N.D. Ill. Feb. 6, 2001); *see also Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 695 (7th Cir. 1992) (finding the standards used in adjudicating Social Security cases are "instructive" in ERISA cases); *Adams v. CIGNA Group Ins. Life Accident Disability Co.*, No. 02C3044, 2004 WL 161483, at *7 (N.D. Ill. Jan. 22, 2004) (holding that if a plan administrator does not consider the SSA's decision, that determination is not based on a complete review of the record); *White v. Airline Pilots Ass'n. Int'l.*, 364 F. Supp. 2d 747, 764 (N.D. Ill. 2005) (finding that SSA determinations are "relevant and instructive" and can be considered in ERISA actions).

In evaluating how much weight (if any) should be given to a SSA determination in an ERISA claim, courts look to see whether all other uncontradicted evidence is aligned with the SSA determination. When all other evidence in the record is in accord with a favorable SSA determination, summary judgment for the plaintiff is justified when the ERISA plan administrator disregards the SSA determination. *Ladd v. ITT Corp.*, 148 F.3d 753, 755-56 (7th Cir. 1998). By contrast, when the evidence does not "absolutely favor" either side, evaluating how much weight should be given an SSA determination by an ERISA plan administrator is a genuine issue of material fact for a jury. *Coles*, 287 F. Supp. 2d at 902.

12

In this case, the contradictory evidence in the record does not "absolutely favor" either side. For instance, LINA points out that Dr. Mendez's report and the FCE report contradict the SSA determination. Lawrence, on the other hand, has identified evidence consistent with the SSA determination, *i.e.*, Dr. Farbman's report, the limitations noted in the FCE report, and the evidence of Lawrence's worsening condition. As such, this Court finds that there is a genuine issue of material fact as to how much weight should be given Lawrence's favorable SSA determination.

Lawrence further argues that LINA is precluded from disavowing the SSA determination under the principles of judicial estoppel because LINA urged Lawrence to obtain SSD benefits to lessen the amount the Plan would have to pay. Lawrence cites *Ladd*, where the Seventh Circuit held that "if a party wins a suit on one ground, it can't turn around and in further litigation with the same opponent repudiate the ground in order to win a further victory." *Ladd*, 148 F.3d at 756. In *Ladd*, however, all the uncontested evidence was in accord with the SSA disability determination, which is not the case here. This Court finds that the degree to which LINA should have considered the SSA determination is an issue of genuine material fact for a jury to decide.

### 2. Worsening of Lawrence's Condition

Lawrence next argues that LINA inappropriately based its decision in large part on Lawrence's alleged failure to document a disabling change in her condition after Lawrence worked as a Claim Service Assistant for years despite the limitations noted by Dr. Farbman and Bernardi. The Seventh Circuit has held that there is no "logical incompatibility between working full time and being disabled from working full time." *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir.

13

2003). The court reasoned as follows: "A disabled person should not be punished for heroic efforts to work by being held to have forfeited his entitlement to disability benefits should he stop working." *Id.*

LINA cites *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975 (7th Cir. 1999), in support of its contention that Lawrence was required to present clinical evidence of a change in her condition. In *Perlman*, the court found that the administrator's insistence that the plaintiff demonstrate a change in her condition was not arbitrary or capricious "for the simple reason that Perlman has never argued that she was less able to do the job at the end of 1994 (or in 1995) than in the middle of 1993." *Id.* at 983. In contrast to the plaintiff in *Perlman*, Lawrence did argue that she was less able to do her job and supported this argument with evidence, including Dr. Farbman's finding that she was completely disabled, an SSA determination of complete disability, a letter from a co-worker, a call to 911 after a fall, and records of increased absences from work. Furthermore, Lawrence notes that even *Perlman* recognized that demanding proof of a change in condition may not always be reasonable:

> We can imagine circumstances under which it would be unreasonable to demand proof of a change in condition. Some disabled people manage to work for months, if not years, only as a result of superhuman effort, which cannot be sustained. Sometimes work beyond one's limitations is essential to maintain one's standard of living, or is the result of an effort to disguise one's limitations from friends and coworkers. Reality eventually prevails, however, and limitations that have been present all along overtake even the most determined effort to keep working.

*Id.*

This Court concludes that the factual disputes as to whether Lawrence adequately provided evidence of a worsening of her condition and whether Lawrence made "heroic

14

efforts" to continue to work despite her limitations preclude summary judgment for either party on the issue.

### 3. The FCE Report

Lawrence next argues that LINA's use of the "outdated" DOT was inappropriate because the actual demands of her job as reported in the State Farm job description exceeded the "sedentary" level. The FCE report noted that Lawrence's ability to lift was inconsistent with the demands of her regular occupation, according to the State Farm job description of the Claims Assistant position. That job description required her to lift up to twenty-five pounds, which is classified in the "medium" category as opposed to the "sedentary" category.

Lawrence maintains that LINA inappropriately ignored the following limitations noted in the FCE report: Lawrence could lift a maximum of ten pounds unilaterally with support with one hand on a walker or external object to maintain standing balance and stability, carry only items that can be held in one hand or placed in a walker bag while maintaining support of a walker, and stand and walk only occasionally for relatively short intervals using support of a rolling walker as needed; and she was limited to no balancing on slippery, uneven, or erratically moving surfaces; no stair or ladder climbing; and no low-level body positioning including deep crouching or kneeling. (Pl.'s LR 56.1 ¶ 26.) *See DiPietro v. Prudential Ins. Co. of Am.*, No. 03C1018, 2004 WL 62818 at *8 (N.D. Ill. Mar. 26, 2004) (finding denial of disability benefits arbitrary and capricious in part because defendant ignored limitations in the FCE). LINA responds by arguing that Lawrence worked despite these limitation, therefore, she must be able to perform the

requirements of her job. As noted earlier, however, working full time in a job does not necessarily preclude a person from being found disabled. *See Hawkins*, 326 F.3d at 918.

This Court finds that there are factual disputes as to whether all of Lawrence's job responsibilities should be classified as "sedentary" as stated in the DOT description or whether any of her job responsibilities should be classified as "medium" as indicated in the State Farm job description. Moreover, factual disputes exist as to whether LINA unreasonably discounted the limitations noted in the FCE when making its disability determination.

### 4. Dr. Mendez's Findings

Lawrence argues that LINA inappropriately based its decision to deny benefits on the opinion of Dr. Mendez, a non-treating, consulting physician, who was contradicted by Lawrence's treating physician. Lawrence contends that relying on a non-treating physician's evaluation is deficient if it is not based on reliable evidence, including the treating doctor's reports. A claim administrator may reasonably deny disability benefits as long as the consulting physician articulates a reasoned basis for finding the claimant is not disabled, even if the consulting physician is employed in-house by the insurer or conducts a paper review of the claimant's medical records instead of examining the claimant, and even if the treating physician believes the claimant is disabled. *Davis*, 444 F.3d at 576; *Semien*, 436 F.3d at 810. But although "plan administrators are not obligated to accord special deference to the opinions of treating physicians," they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of the treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Similarly, the denial of LTD benefits may be arbitrary and capricious when the decision

is based on a conclusion by a non-examining physician who did not examine the entire medical record and discounted relevant medical evidence. *See Carugati v. Long Term Disability Plan for Salaried Employees*, No. 01C5863, 2002 WL 441479, at *6 (N.D. Ill. Mar. 21, 2002).

It is unclear from Dr. Mendez's report whether he sufficiently considered the SSA determination, the limitations noted in the FCE report and whether his decision was based on an inappropriate assumption that Lawrence's job classification was "sedentary." Thus, there is a genuine issue of material fact as to whether Dr. Mendez based his decision on a review of the entire record or discounted relevant medical evidence. Accordingly, the Court cannot find that either party is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons expressed above, the parties' cross-motions for summary judgment [Doc. No. 16] are denied.

SO ORDERED.　　　　　　　　　　ENTERED:

DATE: AUG 2 0 2007

HON. MARIA VALDEZ
United States Magistrate Judge

17